IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**LAVELLE JONES,**

    Petitioner,

  v.

**WARDEN, LEBANON
CORRECTIONAL INSTITUTION,**

    Respondent.

CASE NO. 2:13-CV-155
JUDGE GREGORY L. FROST
MAGISTRATE JUDGE KEMP

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

As the Court's order of July 18, 2013 reflects, this habeas corpus action filed under 28 U.S.C. §2254 involves Petitioner Lavelle Jones's June 2, 2009, convictions in the Franklin County Court of Common Pleas, pursuant to his guilty plea, on two counts of robbery, kidnaping, and a repeat violent offender specification. The trial court sentenced Petitioner to an aggregate term of nineteen years in prison. Petitioner timely appealed his conviction and sentence to the Tenth District Court of Appeals but not to the Ohio Supreme Court. The Tenth District Court of Appeals affirmed his conviction on March 11, 2010. *State v. Jones*, 2010 WL 866126 (Franklin Co. App. March 11, 2010). He attempted to obtain review of that ruling from the Ohio Supreme Court by way of a motion to file a delayed direct appeal, but on April 8, 2012, the Ohio Supreme Court

denied that motion. *State v. Jones*, 131 Ohio St.3d 1508 (2012). This federal case was filed on February 20, 2013.

In response to the petition, Respondent moved to dismiss, arguing that the petition is barred by the one-year statute of limitations found in 28 U.S.C. §2244(d). Petitioner acknowledged that he filed his habeas corpus petition after the one-year statute of limitations (measured from the date on which he could have taken a timely appeal to the Ohio Supreme Court) expired - that date was in April, 2010 - but contended that the statute of limitations was equitably tolled until February 21, 2012, and because he filed this action within a year of that date, it is timely.

Because Petitioner alleged facts which, if true, might warrant equitable tolling of the statute of limitations, the Court appointed counsel for Petitioner and scheduled an evidentiary hearing on his request for equitable tolling. The hearing was conducted on November 13, 2013. Petitioner testified, as did his state court appellate counsel, Michael A. Prisley. The transcript of the hearing has now been filed, and both parties have submitted post-hearing briefs. Respondent has also filed a motion for leave to supplement the post-hearing brief, and the Court grants that motion (Doc. 32). For the following reasons, the Court recommends that Respondent's motion to dismiss on statute of limitations grounds be denied.

## II.  LEGAL STANDARD

Because the facts of this case, drawn from the testimony given and exhibits admitted at the evidentiary hearing, must be evaluated in light of the law relating to the

equitable tolling of §2244(d)'s one-year limitations period, the Court will set out that law first.

A state prisoner seeking federal habeas corpus relief normally has one year from the date his state conviction becomes final to file an action in federal court. 28 U.S.C. §2244(d). That statute of limitations is subject to equitable tolling, however. This Court has had many occasions to review the relevant Supreme Court and Court of Appeals decisions about equitable tolling, and it makes sense simply to quote at length from prior decisions of the Court about the matter rather to state it anew. For example, in *Willis v. Brunsman*, 2012 WL 2564539, *5-6 (S.D. Ohio July 2, 2012), *adopted and affirmed* 2012 WL 3962899 (S.D. Ohio Sept. 11, 2012), the Court said this:

> "[P]etitioner bears the ... burden of persuading the court that he ... is entitled to equitable tolling." *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir.2002). Equitable tolling should be used sparingly. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir.2002). The statute of limitations may be equitably tolled "'when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control.'" *Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 749 (6th Cir.2011) (quoting *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010)).
>
>> The Supreme Court has explained that "[w]e have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). However, "[w]e have generally been much less forgiving ... where the claimant failed to exercise due diligence in preserving his legal rights." *Id.; cf. Baldwin*

> *County Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence.").
>
> *Jurado v. Burt*, 337 F.3d 638, 642–43 (6th Cir.2003). A habeas corpus petitioner is entitled to equitable tolling if he can establish 1) that "he has been pursuing his rights diligently;" and 2) "some extraordinary circumstance stood in his way and prevented timely filing." *Hall*, 662 F.3d at 749. *See also Patterson v. Lafler*, --- F.Appx. ----, No. 10–1379, 2012 WL 48186, at *2 n. 1 (6th Cir. Jan.9, 2012)).

Obviously, given the somewhat imprecise standard used to evaluate claims of equitable tolling (involving determinations of whether a petitioner was "diligent," and whether the factors which led to the untimely filing were "extraordinary"), it is difficult to state any hard and fast rules which can be applied in rote manner to this situation. As the Fifth Circuit Court of Appeals noted in *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), "[a]s a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules ...." Many courts have concluded, however, that if the obstacle to timely filing of a federal habeas petition is just a "garden-variety" attorney error, equitable tolling does not apply. *See, e.g., Holland v. Florida,* 560 U.S. 631, __, 130 S.Ct. 2549, 2564 (2010); *Rues v. Denney*, 643 F.3d 618, 622 (8th Cir. 2011)("counsel's miscalculation of his filing deadline is a 'garden variety claim' of neglect and does not warrant equitable tolling"). On the other hand, if a petitioner's state court attorney engages in egregious conduct which misleads the petitioner into believing that proceedings are being timely filed, that can constitute the type of extraordinary circumstance which will justify equitably tolling the statute of

limitations.  *See, e.g., Fonseca v. Hall*, 568 F.Supp.2d 1110 (C.D. Cal. 2008).  Here, the availability of equitable tolling very much depends on what the Court finds the facts to be, so the Court now turns to a discussion of the evidence.

### III.  THE EVIDENCE FROM THE HEARING

#### A.  MICHAEL PRISLEY

The first witness at the evidentiary hearing was Michael Prisley, the attorney who represented Mr. Jones for purposes of his state court appeal.  That representation occurred during a brief period of time when Mr. Prisley worked as an associate with the Columbus firm of Yavitch and Palmer.  Both before and after that time, Mr. Prisley worked for various governmental agencies including the Columbus City Attorney's office and the Athens County Prosecutor's office.  Mr. Prisley testified that he handled a total of six criminal appeals while at Yavitch and Palmer, all of them as court-appointed counsel.

Mr. Prisley recalled that he was appointed to handle Mr. Jones's appeal in 2009. After being appointed, he did not meet with Mr. Jones (in fact, he testified that they never met in person) and that he did not recall if they ever spoke by telephone.  He also could not recall how many letters he might have written to Mr. Jones, and said that Mr. Jones's file at Yavitch and Palmer had been destroyed when that office was flooded in early 2010.  Additionally, he testified that he did not advise Mr. Jones of the date of the oral argument in his case and was surprised when a man and a woman appeared at the argument and asked him questions about the case.

Mr. Prisley also described his usual practice with respect to briefs, decisions, and other matters relating to a case in which he served as counsel. He ordinarily mailed items of significance to the client. However, he did not have secretarial help, and he might or might not prepare a cover letter when mailing such items.

The record reflects that the Tenth District Court of Appeals' decision was filed in this case on March 11, 2010. *See . State v. Jones*, 2010 WL 866126 (Franklin Co. App. March 11, 2010 ). Four days later, Mr. Prisley prepared his application for payment. His application shows he spent an hour on the case that day, which would have included preparation of the application for payment and, presumably, mailing a copy of the decision to Mr. Jones. Because he had exceeded the limit for compensation in the case, Mr. Prisley doubted that he prepared a cover letter, but he assumed that he mailed a copy of the decision to Mr. Jones by placing it in an envelope. He considered the matter closed as of that date, and did not advise Mr. Jones about his right to seek further review by the Ohio Supreme Court.

Mr. Prisley remained with Yavitch and Palmer until August 26, 2011. He said he received no letters from Mr. Jones during that time. He also took no steps that he could recall to communicate with Mr. Jones after the court of appeals decision. He was shown a number of letters which Mr. Jones claimed to have sent him, but denied seeing any of them, and also testified that the only letters he got from Mr. Jones were handwritten (the letters he claimed not to have received were all typewritten) and that their "tone" was different. Finally, he said that any failure on his part to forward the court of appeals decision to Mr. Jones would have been inadvertent rather than intentional.

## B.  LAVELLE JONES

Mr. Jones was the second and final witness at the hearing.  He agreed that he and Mr. Prisley had never met, and also said they had never spoken on the phone.  He also testified, as he explained in more detail later in his testimony, that he never received a single written communication of any kind from Mr. Prisley.

Mr. Jones testified that he sent a number of letters to Mr. Prisley, only one of which was handwritten.  Ordinarily, he types letters so he can make a carbon copy, but as to the one handwritten letter, time constraints prevented him from typing it.

He described his efforts to keep abreast of developments in his case.  A friend, Louis Foster, sent him docket sheets from time to time about the progress of the appeal.  Petitioner's Exhibit Four contains two such docket sheets, including one from January, 2010, before the appeal was argued.  For family reasons, however, Mr. Foster stopped updating Mr. Jones on the case shortly after he sent the second docket sheet.  Mr. Jones' common-law wife, Martesa Daniels, also communicated with him about the case.  However, that communication also ended in 2010.  Mr. Jones said he rarely used the phone at his institution, Lebanon Correctional, and had not used it at all since April, 2010.  Rather, he chose to communicate through written letters.

The key exhibit in this case is Petitioner's Exhibit 5.  It consists of a number of letters which, according to Mr. Jones, he wrote to Mr. Prisley inquiring about the status of his appeal.  Mr. Jones testified that he did not receive an answer to any of them, nor did Mr. Prisley ever advise him of the March 11, 2010 decision.  Rather, after Mr. Jones filed several motions in the trial court, he received a response from the county

-7-

prosecutor's office mentioning the fact that the appeal had been denied. That occurred in early 2012.

Mr. Jones also testified that he kept records of important dates and events in date books or log books. Several of those were introduced into evidence as well. They show that he had two visits from Ms. Daniels in April, 2010, at which time neither of them had heard anything about the appeal. The same was true when she visited him in October of that year. Mr. Jones noted the sending of the December, 2010 letter in his log book, as well as the March, 2011 and July, 2011 letters. Mr. Jones also made a note that he needed to find someone to go see Mr. Prisley to ask about the appeal, but he was not able to locate anyone to do that. His log book also shows a letter written in October, 2011 referring to Mr. Prisley as a "clown attorney," a reflection of Mr. Jones's anger about not hearing from him.

Mr. Jones was asked whether he had done everything possible to learn about the disposition of his appeal. He testified that other than writing letters and trying to have friends or family members like Mr. Foster and Ms. Daniels call Mr. Prisley, he did not know what else to do. He also testified that had he known about the court of appeals decision, he would have sought to appeal to the Ohio Supreme Court.

Mr. Jones identified January 10, 2012 as the date when he learned his appeal had been denied. Later that month, he obtained copies of the decision from both the Franklin County Clerk of Courts and the Ohio Public Defender's office. He also filed a grievance with the Ohio Disciplinary Counsel complaining about Mr. Prisley. Lastly, he

testified that there would have been no tactical advantage to ignoring the court of appeals decision had he known about it in a timely fashion.

## IV. OTHER EVIDENCE

The only other evidence relevant to this decision is the procedural history of the case.  Some of it is recited above.  The records of the Franklin County courts show that Mr. Jones filed his notice of appeal to the Ohio Supreme Court on March 5, 2012, less than two months after he claims to have learned of the denial of his appeal.  He also filed, at about the same time, a motion to reopen his appeal with the Tenth District Court of Appeals.  He attached an affidavit to that motion which contains the same allegations he makes in this case about how and when he learned of the initial decision by that court and his efforts to learn about the disposition of his case.  Finally, the decision of the Court of Appeals denying the Rule 26(B) motion, filed on August 9, 2012, appears to be a ruling on the merits of the motion to reopen, finding that counsel was not ineffective for failing to raise the additional arguments which Mr. Jones contended should have been presented on appeal.

## V.  DISCUSSION

Before beginning a discussion of the legal significance of the facts of this case, it is necessary to determine what those facts are.  Clearly, there are significant differences in the versions presented by Mr. Jones and Mr. Prisley.  If the Court were to conclude, based on Mr. Prisley's testimony about his usual practice, that he mailed a copy of the court of appeals decision to Mr. Jones and that Mr. Jones received it, there would be

nothing further to discuss. For the following reasons, however, the Court does not reach that conclusion.

Mr. Jones does, of course, have the burden of proving the facts supporting his claim of equitable tolling by a preponderance of the evidence. To support his claim, he provided, in addition to his testimony, documentary evidence in the form of letters and log or date book notations which show that he did not receive a copy of the court of appeals decision from Mr. Prisley. There was no evidence that any of these were fabrications apart from Mr. Prisley's testimony that he never received the letters.

There is substantial additional circumstantial evidence which also supports Mr. Jones' version of the facts. It is clear that prior to the decision of the court of appeals, he was diligently monitoring his appeal, even to the point of having family members attend the oral argument (which Mr. Prisley never bothered to inform him about) and having his friend, Louis Foster, send him docket sheets. It would have been unusual for Mr. Jones to drop any interest in a further appeal simply because the state court of appeals ruled against him. Further, once he did (at least according to his testimony) learn of the court of appeals decision, he promptly filed a motion for leave to appeal to the Ohio Supreme Court and a Rule 26(B) motion in the court of appeals, raising grounds that his family members had discussed with Mr. Prisley at the oral argument and which Mr. Prisley had not raised in the initial appeal. That motion was supported by an affidavit asserting exactly the same factual claims that Mr. Jones presented here. He also filed a complaint with the Office of Disciplinary Counsel making identical allegations.

True, all of those actions could have been taken by Mr. Jones if he belatedly realized that he had missed various filing deadlines after the court of appeals decision and that he needed to fabricate some reason to have the courts excuse his delay. However, that is not the most logical explanation. Nor does the timing of Mr. Jones's actions support that theory. He explained that he did not learn of the court of appeals decision until some time in January, 2012, through filings in the state trial court, and the state trial court records available through the Franklin County Courts case information online show that, in Mr. Jones' numerous filings of December 19, 2011, he made no reference to, nor showed any awareness of, the March 11, 2010 decision of the Tenth District Court of Appeals. Those records also show that the memorandum filed by the county prosecutor's office in opposition to these motions on January 6, 2012 refers to that decision, and Mr. Jones' reply, filed only 14 days later (and presumably mailed some time before that date, because Mr. Jones was in prison at the time) states that Mr. Jones was not aware of the decision. Again, if Mr. Jones knew about the decision, and only realized after he filed his post-trial motion that he had missed deadlines and needed to create a story which might gain him some relief, he made that decision quickly and has reiterated it frequently and consistently since that date - a scenario that is, again, possible, but not probable.

Against the evidence that Mr. Jones did not receive the decision, the Court has little more than Mr. Prisley's testimony about his usual practice to rely on. Because Mr. Prisley did not, even if he mailed the decision to Mr. Jones, prepare and keep a copy of a cover letter, or make any file notation about the mailing, there is no evidence which

would corroborate the suggestion that he followed his "usual practice" in this case. Mr. Prisley candidly admitted that he had no specific recollection of whether he did or did not mail the decision. Given that he took no other steps, at any time, to keep Mr. Jones informed about the progress of the appeal - not even notifying him about the date of oral argument - the Court has little trouble accepting the proposition that the decision was not mailed to Mr. Jones. Judged in terms of what is more likely true than not true, on this record, the evidence favors Mr. Jones, and the Court finds as a fact that he did not become aware of the court of appeals decision until he received the Franklin County prosecutor's response to his post-trial motions - a date shortly after January 6, 2012 - and did not actually receive a copy until February 21, 2012. It is worthwhile noting that the Tenth District Court of Appeals also apparently accepted this explanation when it found that Mr. Jones "provided good cause for the untimely filing of his application" for reopening under Rule 26(B). *See Return of Writ*, Doc. 7, Ex. 33, at 4.

      Having decided the facts, the Court must still analyze them in terms of whether Mr. Jones exercised due diligence in keeping abreast of developments in his state court case, and whether he was prevented, by some extraordinary circumstance, from learning about those matters which triggered the running of the federal statute of limitations. As to Mr. Jones' diligence, the question is whether the various efforts he made to find out how his appeal was progressing were reasonable under the circumstances, and if, as time progressed, he should have done more to find out whether a decision had been issued. The Court addresses that issue first.

There is no single standard which defines how a habeas corpus petitioner must attempt to keep up to date about the progress of state court proceedings. Such petitioners find themselves in different circumstances, and those circumstances dictate, to some extent, what they must do in order to be considered diligent. For example, an inmate with internet access to court dockets may be required to use that means to check on the progress of a state court case, while one with no such access will necessarily be relegated to other methods. As one court has stated, "[t]he diligence requirement 'does not demand a showing that the petitioner left no stone unturned.'" *Munchinski v. Wilson*, 694 F.3d 308, 330 (3d Cir. 2012), *quoting Ramos-Martinez v. United States*, 638 F.3d 315, 324 (1st Cir. 2011). As that court noted, "[i]f a petitioner 'did what he reasonably thought was necessary to preserve his rights ... based on information he received ... then he can hardly be faulted for not acting more "diligently" than he did.'" *Id*. at 331, *quoting Holmes v. Spencer*, 685 F.3d 51, 65 (1st Cir. 2012).

Relying on inaccurate advice from a court about the pendency of an appeal has been held to be reasonable. *See Williams v. Thaler*, 400 Fed. Appx. 886 (5th Cir. Nov. 2, 2010). That is not what happened here, however. Mr. Jones was never advised by anyone, including his attorney, that his appeal was still pending. On the other hand, he was never told that it was not. The Court concludes that, for at least some period of time, he could reasonably rely on the lack of information as an indication that nothing had happened in the state court of appeals. The key question is, however, whether it was reasonable for him to wait for almost two years after the oral argument date (which he knew about) while doing nothing other than writing letters to an attorney who had

proved himself to be non-communicative, and not taking any other steps - such as writing directly to the court of appeals - to try to find out if a decision had been rendered.

Respondent argues that even if Mr. Prisley did not send Mr. Jones a copy of the court of appeals decision, Mr. Jones did not act with the requisite diligence; as Respondent puts it, "had he remained diligent in monitoring the status of his case, Jones could have learned of and obtained the Ohio Court of Appeals decision." *Respondent's Post-Hearing Brief*, Doc. 31, at 6. In contrast, in his post-hearing memorandum, Mr. Jones asserts that he "took all reasonable steps to keep up on his case, and acted with all diligence one could expect (and more). He has more than satisfied the 'diligent pursuit' standard." *See* Doc. 30, at 4.

Although this case presents a fairly close issue, the Court agrees with Petitioner that he has met the standard for equitably tolling the statute of limitations. It is true that, as more and more institutions grant internet access to inmates, inmates will have a correspondingly greater ability (and responsibility) to keep track of their legal matters. It is also true that inmates who have strong outside support systems may well be required to use those systems to keep track of legal matters in order to be acting diligently. Those concepts apply even when the first action which deprives an inmate of the knowledge needed to pursue state court remedies in a timely fashion - the duty of the inmate's attorney to advise the inmate of events in his or her case as the occur - has been breached by the attorney. In this case, however, the facts show that Mr. Jones did not have internet access at the relevant times; he lost his community support system

consisting of his friend, Louis Foster, and his common-law wife during the time when the court of appeals decision was issued; and he made numerous unsuccessful attempts to have his attorney communicate with him about his appeal.  Under these very case-specific circumstances, the Court finds that Mr. Jones pursued information about his state court case with sufficient diligence, and that the primary cause of his failure to meet the time limits in state court was his attorney's inexplicable inattention to the issuance of the decision and the efforts which Mr. Jones made to communicate with him later.  Therefore, the statute of limitations should be equitably tolled in this case, and Respondent should be directed to file a return of writ addressing the merits of Mr. Jones's grounds for relief.

## VI.  RECOMMENDATION

For all of the reasons set forth above, it is recommended that Respondent's request to dismiss this case on limitations grounds be denied and that Respondent be directed to file a return of writ addressing the merits of Petitioner's claims within twenty-one days of any order adopting this recommendation.

## VII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed

findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation <u>de</u> <u>novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


      /s/ Terence P. Kemp
     United States Magistrate Judge