IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LAVELLE JONES,

      Petitioner,

      v.

WARDEN, LEBANON
CORRECTIONAL INSTITUTION,

      Respondent.

CASE NO. 2:13-CV-155
JUDGE GREGORY L. FROST
MAGISTRATE JUDGE KEMP

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

This habeas corpus action filed under 28 U.S.C. §2254 involves Petitioner Lavelle Jones's June 2, 2009, convictions in the Franklin County Court of Common Pleas, pursuant to his guilty plea, on two counts of robbery, kidnaping, and a repeat violent offender specification. The trial court sentenced Petitioner to an aggregate term of nineteen years in prison. Petitioner timely appealed his conviction and sentence to the Tenth District Court of Appeals but not to the Ohio Supreme Court. The Tenth District Court of Appeals affirmed his conviction on March 11, 2010. *State v. Jones,* 2010 WL 866126 (Franklin Co. App. March 11, 2010). He attempted to obtain review of that ruling from the Ohio Supreme Court by way of a motion to file a delayed direct appeal, but on April 8, 2012, the Ohio Supreme Court denied that motion. *State v. Jones*, 131 Ohio St.3d 1508 (2012).  In response to the petition, Respondent moved to dismiss, arguing that the petition is barred by the one-year statute of limitations found in  28 U.S.C. §2244(d).

The Court, in an order filed on April 9, 2014, denied the motion to dismiss, holding that Petitioner was entitled to equitable tolling of the statute of limitations based on his appellate attorney's failure to advise him of the fact that his appeal had been dismissed by the state court of appeals.

Thereafter, on April 29, 2014, Respondent filed a Return of Writ arguing that all of the claims set forth in the petition were procedurally defaulted and that Petitioner cannot show cause and prejudice to excuse the default. Respondent also contends that grounds one, three, four and five are without merit.  Petitioner filed his traverse on May 27, 2014.  For the following reasons, it is recommended that the petition be **DENIED** and that this case be **DISMISSED**.

## II.  THE FACTS

The facts of this case were summarized by the Tenth District Court of Appeals as follows:

> On December 13, 2008, appellant entered a tanning salon with what appeared to be a handgun, which was actually a BB gun, and demanded money from the employee. The employee gave appellant money from the cash registers, and appellant asked her where the backdoor was located. The employee walked appellant to the backdoor, and he fled. Police had previously attached a GPS unit to appellant's vehicle because he was a suspect in other crimes and, when they determined that the description of the tanning salon robber and appellant was the same, they pulled over appellant's vehicle. In appellant's vehicle was cash in a paper bag, black clothing, and a BB gun. Appellant was arrested.
>
> On December 23, 2008, appellant was indicted on one count of kidnapping, with RVO specification (based upon a 1984 conviction for rape), a felony of the first degree; one count of robbery, with RVO specification, a felony of the second degree; and one count of robbery, with RVO specification, a felony of the third degree. On December 26, 2008, appellant entered a plea of not guilty.

On June 2, 2009, appellant appeared before the court to change his plea. The state indicated that appellant would be pleading guilty to the indictment, except as to the RVO specification with regard to the third-degree robbery. The state indicated that the RVO specification could only apply to a second-degree felony or higher and, therefore, the state was moving to dismiss the RVO specification as to the third-degree robbery. The court questioned whether the RVO specifications were valid, and appellant claimed they were unconstitutional because it took the sentencing discretion from the court. The court allowed appellant to plead guilty to the indictment, but the parties could brief the specification issue at the sentencing hearing.

After the state recited the facts of the case, the trial court stated it had a "problem" with the kidnapping charge because the facts indicated that the victim was released without being harmed, which would reduce the kidnapping offense to a second-degree felony pursuant to R.C. 2905.01(C)(1). The prosecutor countered that the "safe place unharmed" issue was an affirmative defense to be raised at trial and also argued that the victim had suffered psychological harm. The court responded that, while appellant could waive the affirmative defense and plead guilty, the evidence simply did not show the necessary "elements" for a first-degree felony kidnapping offense, and the court did not believe psychological harm constituted harm. The state indicated it would proceed with the kidnapping offense being a first-degree felony. Appellant's counsel responded he did not feel he could take the current case to trial because another case against appellant was outstanding. The trial court responded it still had a problem with the kidnapping charge because the state did not meet its burden, and the court indicated it would never find the offense to be a first-degree felony. However, the trial court accepted the guilty plea, but allowed briefing on the "safe place unharmed" issue, stating that, if psychological harm does not constitute harm, it would probably reduce the kidnapping offense to a second-degree felony on its own motion. Appellant then reiterated that he wished to plead guilty and that he understood all of the proceedings and ramifications.

At the sentencing hearing on June 23, 2009, the prosecutor stated that sentencing for the RVO specification for the second-degree felony robbery was not possible because the indictment had not alleged actual or threatened serious physical harm, but that the RVO specification was still appropriate on the first-degree felony kidnapping count. The trial court indicated that appellant had filed a motion to dismiss the RVO specification based upon constitutionality, but it did not consider the

motion a motion to withdraw his plea, and appellant agreed it was not seeking to withdraw the plea.

The trial court and the parties then discussed whether the kidnapping offense was a first- or second-degree felony, and the court found that the phrase "safe place unharmed" related to physical harm and not psychological harm. However, the court found that the guilty plea had been to a first-degree felony and that the "safe place unharmed" affirmative defense, which would have reduced the offense to a second-degree felony, was waived by the plea. After argument by the parties, the court also found that the RVO specification was constitutional and that the kidnapping and the second-degree robbery charges would not merge for purposes of sentencing, as they were committed with a separate animus.

The trial court then indicated that it would proceed with sentencing. At that point, appellant's counsel moved to withdraw appellant's guilty plea, asserting that he had been ineffective in his representation of appellant, although counsel admitted he would not be seeking withdrawal of the plea if the legal rulings would have been in appellant's favor. The trial court denied the motion, finding that appellant should have sought to withdraw his plea before the legal rulings, and there was no basis to withdraw a plea based upon a legal determination. The trial court proceeded to sentencing. The court found the two robbery counts merged and imposed the following terms of imprisonment: ten years for the kidnapping with an additional five years for the accompanying RVO specification, and four years for the second-degree robbery count, with all sentences to be served consecutively, for a total of 19 years.

*State v. Jones*, 2010 WL 866126, *1-2.

### III. THE RELEVANT PROCEDURAL HISTORY

Petitioner raised only two claims in his direct appeal:

[I.] The trial court erred to the prejudice of appellant by denying appellant's motion to withdraw his guilty plea prior to sentencing.

[II.] Appellant's guilty plea was not given knowingly, voluntarily, and intelligently, in that trial counsel rendered ineffective assistance of counsel in violation of appellant's rights under the Fifth, Sixth, and Fourteenth

> Amendments to the United States Constitution and Sections 10 and 16
> Article I of the Ohio Constitution.

*State v. Jones, supra,* at *2.  The state court of appeals considered these claims together and found they lacked merit, holding that even if counsel's performance was deficient in some way, Petitioner could not show prejudice, and that the trial court did not abuse its discretion in denying the motion to withdraw the plea.  As noted above, that decision was not timely appealed to the Ohio Supreme Court.

As it relates to the claims he has included in his federal habeas corpus petition, Petitioner's next relevant filing was a motion to reopen his appeal, which was filed in the Tenth District Court of Appeals on March 19, 2012.  *See Motion to Dismiss*, Doc. 7, Exh. 29.  In it, he asserted that appellate counsel was ineffective for failing to present these issues:

> 1.  Petitioner did not meet the statutory definition of a Repeat Violent Offender;
>
> 2.  The trial court erred when it failed to merge the convictions for robbery and kidnaping for purposes of sentencing; and
>
> 3.  The trial court erred in sentencing Petitioner to a first degree kidnaping.

In a decision filed on August 9, 2012, the state court of appeals found good cause for the late filing of the motion, but denied the motion on its merits, finding that counsel was not ineffective for having failed to raise those issues.  *State v. Jones*, No. 09-AP-700 (Franklin Co. App. August 9, 2012)(Exhibit 33 to the Motion to Dismiss, Doc. 7).  Petitioner timely appealed that decision to the Supreme Court of Ohio, but it declined the appeal in a decision dated November 28, 2012.  *Motion to Dismiss*, Exh. 38.

In his federal habeas petition, Petitioner raises six grounds for relief.  They are, as he states them,

**GROUND ONE**: Trial counsel's ineffective assistance of counsel resulted in a plea that was involuntary, unknowing, and unintelligent.

**Supporting facts**: Trial counsel erroneously advised petitioner to accept a plea by advising that charges would be dropped and others would merge. He then failed to move to withdraw the plea when instructed to so (sic). This ineffective assistance violated the 5th, 6th, & 14th Amendments.  It also resulted in a guilty plea to charges that did not fit the allegations.

**GROUND TWO**: I was denied due process of law when my pre-sentence motion to withdraw my guilty plea was denied without a hearing.

**Supporting facts**: My trial counsel acknowledged that he had provided ineffective assistance of counsel and moved to withdraw the plea before sentencing.  This motion was denied without a hearing in violation of the 5th Amendment and the 14th Amendment to the U.S. Constitution.

**GROUND THREE:** I was denied effective assistance of appellate counsel due to his failure to raise due process issues.

**Supporting facts**: The trial accepted a plea to first degree kidnapping after noting that the facts supported only a second degree charge.  Appellate counsel failed to raise this issue on appeal in violation of the 5th & 14th Amendments to the U.S. Constitution.

**GROUND FOUR**: I was denied effective assistance of appellate counsel when he failed to argue that the sentences should merge.

**Supporting facts**: The separate consecutive sentences for the robbery and kidnapping charges should merge by law and the failure to raise this issue on direct appeal violates the 5th, 6th &14th Amendments to the U.S. Constitution.

**GROUND FIVE**: Petitioner was denied effective assistance of appellate (sic) because counsel failed to raise the issue that the state's repeat violent offender statute did not apply.

**Supporting facts**: The trial court convicted the Petitioner under the state's repeat violent offender statute which requires finding either that

Petitioner committed the most serious form of the offense or had three felonies in 20 years.  No such findings were made and appellate counsel's failure to raise the issue violates the 5th, 6th, & 14th Amendments.

**GROUND SIX**: Petitioner was denied effective assistance of appellate counsel based on counsel's complete lack of communication with Petitioner.

**Supporting facts**: Appellate counsel's failure to have any communication with petitioner and his failure to notify petitioner of the decision of the court of appeals constitutes ineffective assistance of counsel in violation of the 6th & 14th Amendments.

*Petition*, Doc. 1.

## IV.  PROCEDURAL DEFAULT

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in the state criminal process.  Procedural default can be a fairly complicated doctrine, involving a number of court-made rules and exceptions, but the basic premise is simple and is reflected in the language Congress has used in 28 U.S.C. §2254.

Under §2254, a federal court may grant relief to a state prisoner only if that person is being held in custody in violation of the Constitution or law of the United States - that is, that the prisoner's conviction or sentence was unlawful under federal law.  In order for a federal court to decide any claims on their merits, "the state prisoner must give the state courts an opportunity to act on his claims before he presents those

claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). That is so because §2254(b) states that an application for a writ of habeas corpus filed by someone in petitioner's position "shall not be granted" unless "the applicant has exhausted remedies available in the courts of the State...."

One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to [petitioner's] failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case - that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the Petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the Petitioner's claim and that the Petitioner failed to comply with the rule." *Id*. Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal

constitutional claim. *Id*. Finally, if the Court has determined that a state procedural rule was not complied with, and that the rule was an adequate and independent state ground, then the Petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

## A.  Grounds One and Two

Here, Petitioner raised his first two grounds for relief in his state direct appeal. He did not, however, present them to the Ohio Supreme Court in a timely fashion, essentially for those reasons set forth in the Court's order which excused the late filing of this case on grounds of equitable tolling (*i.e.* his attorney never told him that the state court of appeals had issued a decision).  The Ohio Supreme Court refused to permit the late filing.  Respondent argues that Petitioner cannot assert ineffectiveness of his appellate counsel as cause to excuse the procedural default because even if counsel was ineffective in that regard, Petitioner never filed a separate state proceeding in which he raised that particular claim of ineffective assistance of appellate counsel, thus failing to exhaust the claim.  Such exhaustion is required.  *See, e.g., Edwards v. Carpenter,* 529 U.S. 446 (2000).  Respondent asserts, alternatively, that Petitioner still waited 55 days after learning of the dismissal of his direct appeal to file his motion for leave to file a delayed appeal with the Ohio Supreme Court, thus undercutting "the rebuttable presumption that, had his attorney sent him the decision timely, he would have filed his appeal with the Ohio Supreme Court on time."  *Return of Writ*, Doc. 37, at 15.

In Petitioner's response to these arguments, he first makes the general statement that "this Court has already excused the late filing of these petitions [presumably including the untimely appeal to the Ohio Supreme Court] due to ineffective assistance of appellate counsel." *Traverse*, Doc. 40, at 15.  That is not necessarily so; some courts have held that "ineffective assistance of counsel is irrelevant to the tolling decision," *see United States v. Petty*, 530 F.3d 361, 366 (5th Cir. 2008), and the two inquiries are clearly not the same.  However, the Court notes that Petitioner argued the lack of timely notice of the appellate court's decision as cause for his late filing to the Supreme Court, (an argument which that court rejected) and in doing so he directly asserted the ineffective assistance of appellate counsel.  *See Motion to Dismiss*, Doc. 7, Exh. 19.  It is not clear where else that particular issue could have been raised.  The purpose of the motion to reopen under Rule 26(B) was to bring additional substantive arguments before the state court of appeals which, according to Petitioner, his counsel was ineffective for failing to have raised, and not to obtain additional time to appeal the prior decision to the Ohio Supreme Court, so this specific instance of ineffective assistance of counsel would not have been properly asserted in that motion.  It is at least arguable that Petitioner raised this claim in the only possible place he could have, and it is also arguable that the Ohio Supreme Court  did not rely on the 55-day delay between January 10, 2012 and the date Petitioner sought leave to file a delayed appeal as the reason for denying leave.  Further, although January 10, 2012 is the date on which Petitioner learned of the appeals court's decision, he did not actually receive a copy until later that month or perhaps the following month.  It appears that he moved for leave to file a delayed appeal within 45

days of the date he finally obtained a copy of the decision.  Since that is so, the Court cannot conclude, as Respondent suggests, that Petitioner is unable to show that had he been timely notified of the appeals court's decision, he would have sought further review.  Given these substantial uncertainties about whether Petitioner properly presented to the Ohio courts his claim of ineffective assistance of appellate counsel for failing to notify him of the issuance of the appeals court's decision, the Court will further review Grounds One and Two rather than relying on this particular instance of alleged procedural default.

### B.  Grounds Three through Five

These three grounds stand in a different procedural posture from Grounds One and Two.  They were raised in the Rule 26(B) motion as ineffective assistance of counsel claims, but, according to Respondent, they were defaulted because of the way Petitioner presented them to the Ohio Supreme Court.  There, he raised only the underlying claims on their merits and did not argue ineffective assistance of counsel.

Again, this argument is problematic.  Petitioner did address the substantive claims in his motion in support of jurisdiction, but whether those claims had merit was half of the issue decided by the Tenth District Court of Appeals, *i.e.* whether Petitioner was prejudiced by his counsel's failure to raise them.  That is part of the *Strickland* analysis.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  The State's response to Petitioner's memorandum in support of jurisdiction addressed the issue of ineffective assistance of counsel, arguing that Petitioner "barely acknowledge[d]" that this was the proper legal basis for his arguments, *see Motion to Dismiss*, Exh. 37, at 1, but then stating

this as the proposition of law raised by Petitioner's appeal: "A defendant bears the burden of demonstrating that his counsel was ineffective." *Id*. at 2. The State further argued that Petitioner's appellate counsel was not ineffective for failing to raise the three substantive issues which Petitioner identified in his brief. Given this state of the record, the Ohio Supreme Court may well have been fairly presented with the merits of Petitioner's three ineffective assistance of counsel claims. Rather than resolving that issue definitively, the Court will also examine the merits of Grounds Three through Five.

### C. Ground Six

Ground six raises directly the issue of whether counsel was ineffective for failing to inform Petitioner about the court of appeals' decision on his direct appeal. Given that the success of this claim depends entirely on whether the two substantive claims which Petitioner wanted to appeal - Grounds One and Two here - have any merit, the Court will subsume discussion of Ground Six to the resolution of Grounds One and Two.

### V. THE MERITS

### A. Ground One

Ground one raises the issue of whether Petitioner's guilty plea was rendered involuntary, unknowing, or unintelligent due to the ineffective assistance of counsel. That claim was raised in and decided by the Tenth District Court of Appeals. Under those circumstances, the Court applies a deferential standard of review to the state court's resolution of the claim, stated as follows.

The provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) govern the scope of this Court's review. *See Penry v. Johnson*, 532 U.S. 782, 791 (2001); *Wilson v. Parker*, 515 F.3d 682, 691 (6th Cir.2008). AEDPA imposes a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and "demands that state-court decisions be given the benefit of the doubt," *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). *Renico v. Lett*, 559 U.S. 766 (2010) (footnote omitted).

When the claims presented in a habeas corpus petition have been presented to and decided by the state courts, a federal habeas court may not grant relief unless the state court's decision was contrary to or an unreasonable application of clearly established federal law, or based on an unreasonable determination of the facts in light of the evidence that was presented. 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In applying this statute, the Supreme Court has held that "[t]he focus ... is on whether the state court's application of clearly established federal law is objectively unreasonable ... an unreasonable application is different from an incorrect one." To obtain habeas corpus relief, a petitioner must show the state court's decision was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Bobby v. Dixon*, –––U.S. ––––, ––––, 132 S.Ct. 26, 27 (2011), *quoting Harrington v. Richter*, 562 U.S. 86, ––––, 131 S.Ct. 770, 786–87 (2011). This bar is "difficult to meet" because "habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 131 S.Ct. at 786 ( *quoting Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). In short, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Id.*, *quoting Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

As Petitioner argued this claim to the state court of appeals, counsel erred by failing to inform him adequately of (1) the nature of the charges against him, (2) the maximum potential penalty, and (3) the effect of his guilty plea.  The claim focused on the plea to the F-1 kidnaping charge, which the trial judge expressed concern about based on the fact that the victim appeared to have been released in a "safe place unharmed" - a fact which, if a defendant could prove it at trial, would reduce the seriousness of the kidnaping charge.  As noted above in the Tenth District's decision, the trial judge ultimately determined that this fact was not a part of the State's burden

to negate, but was an affirmative defense to first-degree kidnaping which could be waived by a guilty plea.  Petitioner's appellate brief also mentioned the repeat violent offender specification and the fact that the guilty plea waived any potential challenge to that specification as being unconstitutional.  The result, according to petitioner, is that he relied on trial counsel's advice to his detriment and was left without a clear understanding of the penalty he faced if convicted.

The state court of appeals rejected this argument for the following reasons.  First, it found that "appellant's counsel was competent."  *State v. Jones, supra*, at *3.  Applying the correct test (*Strickland*), the court then found that the trial judge fully explained the nature of the charges to Petitioner as well as the maximum punishment he was facing. In fact, "the trial court explained to appellant the maximum possible penalties for the offenses and specifically cautioned him several times that they were subject to the outcome of the legal issues to be discussed at the sentencing hearing."  *Id*. at *4.  After that occurred, Petitioner acknowledged his understanding of those issues and his satisfaction with counsel.  *Id*.  Then, assuming for argument's sake that counsel did act ineffectively by failing to halt the plea proceeding after these issues came up, the court of appeals found that the decision to continue with the plea was made by Petitioner and his counsel for reasons relating to other pending charges and to the State's refusal to reduce the charges; that is, "[i]t was clear that appellant's counsel and appellant both agreed that taking these charges to trial was not a viable option."  *Id*.  Consequently, the court of appeals found that Petitioner could not demonstrate prejudice because it was likely that he would have entered a plea even if his counsel had misadvised him on

these issues.  *Id.*  This latter finding is an application of controlling federal law on the showing of prejudice needed to demonstrate ineffective of counsel in connection with a guilty plea; it is the petitioner's burden to show that he would not have pleaded guilty but for counsel's allegedly erroneous advice.  *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985)("in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial").

Petitioner does not directly address this claim in his traverse.  He argues that his plea was involuntary, but he does not attribute that to any error on the part of his counsel; rather, he claims that "it was the trial court's conduct which led to an involuntary plea."  *Traverse*, Doc. 40, at 5.  That is so, he asserts, because the trial court's expressed concern about the degree of the kidnaping offense prevented Petitioner from understanding that he was "entering into a plea for a first degree kidnaping."  *Id.*  He does not explain how or why the state court of appeals' resolution of his ineffective assistance of counsel claim was an unreasonable application of clearly-established federal law, nor does he argue that the state court's factual findings - including its findings that the maximum penalties were explained to Petitioner and that he and his counsel had strategic reasons for pleading guilty to a charge to which an affirmative defense may have existed - were unreasonable.  Section 2254(e)(1) provides that state court factual findings are presumed to be correct, and that applies equally to facts found by an appellate court as to findings made by a trial court.  *Sumner v. Mata*, 449 U.S. 539, 545-46 (1981); *Mason v. Mitchell*, 320 F.3d 604, 614 (6th Cir. 2003)(the "presumption of

correctness also applies to the factual findings made by a state appellate court based on the state trial record"). Under these circumstances, there is no legal basis upon which to overturn the state court's resolution of the issues presented in Petitioner's first ground for relief.

## B. Ground Two

As he presents it here, Petitioner's second ground for relief raises a very discrete issue: that when the state trial court denied his request to withdraw his guilty plea without first holding a hearing, it violated his due process rights. Respondent contends that this issue was not presented to the state court of appeals as a federal constitutional claim but as a state law claim - which, if true, would constitute a procedural default. Alternatively, Respondent argues that if Petitioner intends to assert the same state law claim here, that claim is not cognizable because a federal court can grant habeas corpus relief to a state prisoner only if there was a violation of federal law in the state court proceedings. *See* 28 U.S.C. §2254(a).

Petitioner's traverse neither addresses this specific claim of procedural default nor the cognizability issue. In fact, it does not appear to refer at all to the claim that the trial court erred by denying a hearing on the motion for leave to withdraw the guilty plea.

As discussed more fully above in the section on procedural default, an issue of federal constitutional law, to be properly preserved for federal habeas corpus review, must be presented to the state courts either directly as a federal constitutional issue, or

by citing to state law cases which relied on federal constitutional principles in deciding the issue presented.  *See, e.g., Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987).

Petitioner's appellate brief (Exh. 11 to Doc. 7) framed the issue as whether the trial court abused its discretion by not holding a hearing.  He cited to no federal cases in his memorandum, nor did he make any explicit reference to the United States Constitution (or any similar provisions of the Ohio Constitution).  The primary case upon which he relied, *State v. McNeil*, 146 Ohio App. 3d 173 (Hamilton Co. App. 2001), did not employ a federal constitutional analysis.  The Tenth District Court of Appeals likewise analyzed this specific claim without reference to any federal constitutional principles or citation to any federal law authority.  For these reasons, the Court concludes that Petitioner did not present the federal due process claim which he raises here as his second ground for relief to the state courts, and he had not identified any reason for that failure which would justify the default of that claim.  Consequently, although the first procedural default identified may not be sufficient to justify dismissal of this claim, the second one argued by Respondent - the failure to have presented this claim to the state courts as a federal constitutional claim - does.

### C.  Grounds Three, Four, and Five

Petitioner's third, fourth, and fifth grounds for relief all raise issues of ineffective assistance of appellate counsel.  Each identifies a claim which, according to Petitioner, should have been raised on direct appeal but was not, due to counsel's unconstitutionally ineffective performance.  As Petitioner argues in his reply, these

were meritorious claims, and had they been raised, Petitioner would have obtained relief on appeal.

*Strickland*, of course, is the seminal case on ineffective assistance of counsel.  In order to make out a claim of ineffective assistance, a petitioner must show both that his counsel's performance was deficient (*i.e.* that he made errors that no reasonably competent attorney would have made) and that the petitioner was prejudiced - meaning that but for counsel's errors, there is a reasonable probability that the outcome of the proceedings would have been different.  *See Strickland*, 466 U.S. at 687.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781–82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray,* 477 U.S. 527, 536 (1986) (*quoting Jones v. Barnes*, 463 U.S. 745, 751–52 (1983)). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427–28 (6th Cir.1999). This list is not exhaustive and need not produce a certain "score." *Id*. at 428. It must be kept in mind, of course, that under the AEDPA, this Court must give substantial deference to the decision of the state courts on this issue, and, further, scrutiny of defense counsel's performance itself must be "highly deferential." *Strickland*, 466 U.S. at 687.

The Court turns first to the prejudice prong of the *Strickland* analysis, because that is dispositive here. To reiterate, Petitioner's three claims raised in his Rule 26(B) motion were that the court of appeals should have been asked to consider, on direct appeal, whether (1) Petitioner met the statutory definition of a Repeat Violent Offender (the "RVO" specification); (2) his convictions for robbery and kidnaping should have merged for sentencing purposes; and (3) he should have been sentenced for first degree kidnaping when the victim was released in a safe place unharmed. The Tenth District Court of Appeals considered the merits of each of these arguments - all state law claims - when addressing the issue of prejudice. In each instance, that court concluded that

Petitioner was not prejudiced by his counsel's failure to raise the claim on direct appeal because each claim lacked merit as a matter of state law.  Consequently, had the claims been raised, the outcome of the appeal would not have been different.

The language from the court of appeals' opinion (Exh. 33 to Doc. 7) fully illustrates this conclusion.  As to the RVO specification, that court held that the trial court had discretion to sentence Petitioner as an RVO under state law, and that *State v. Foster*, 109 Ohio St. 3d 1 (2006) had eliminated any requirement that the trial court make factual findings before imposing such a sentence.  *Id*. at 3-4.  Consequently, there was no error in the proceedings which could have been corrected on direct appeal.

As to the merger issue, the court of appeals held that, under controlling Ohio precedent, *see State v. Johnson*, 128 Ohio St. 3d 153 (2010), the key issue was whether the two offenses were committed by the same conduct and with the same state of mind.  In the language it quoted from *Johnson*, *see id*. at 163, the appeals court focused on whether the robbery and kidnaping offenses to which Petitioner pleaded guilty were committed with the same or a separate animus.  It found that the kidnaping occurred after the robbery was complete because Petitioner could safely have left the tanning salon after obtaining money from the occupants.  Instead, he forced an employee, at gunpoint, to accompany him to the rear exit.  Consequently, the court of appeals concluded that "appellant's convictions did not merge ...."  Exh. 33, at 5.

Lastly, as to the first degree kidnaping issue, Petitioner wanted to raise the claim that the trial court could not properly have found him guilty of that offense, and sentenced him accordingly, because the facts articulated at the plea hearing did not

21

support a conviction for that offense. More specifically, he argued that the trial court abused its discretion by accepting that plea when the state could not prove that the victim was physically (as opposed to psychologically) harmed.  He criticized the trial court's reasoning - that because Petitioner had pleaded guilty to first degree kidnaping, he had to be sentenced for that crime even if he did not commit it - as circular, and argued that the trial court should have corrected this error at the time of sentencing.

The court of appeals interpreted this argument as an attack on the trial court's alleged failure to advise Petitioner that by pleading guilty to first degree kidnaping, he waived any defenses which might reduce the degree of the offense, including the defense that he left the victim in a safe place unharmed.  It then determined, as a factual matter - a finding which this Court must respect - that the trial court clearly informed Petitioner of the potential penalty for first degree kidnaping and that he pleaded guilty with that knowledge.  Even if that were not the gist of his argument, however - and Petitioner's traverse presents a somewhat different version, claiming that "pleading guilty to facts which do not support the offense of conviction is not 'waivable', as it goes to the core of whether or not the plea was voluntarily made," *see Traverse*, Doc. 40, at 4-5 - the state court of appeals still determined that his claim lacked merit, so that he was not prejudiced by his counsel's failure to raise it.

It is helpful to note, in regard to this third claim, that in its earlier opinion, the Tenth District Court of Appeals cited to *State v. Leslie*, 14 Ohio App. 3d 343, 345 (Montgomery Co. 1984) for the proposition that the state has no obligation, in a prosecution for first degree kidnaping, to offer any evidence on the issue of harm to the

victim. The underlying statute, Ohio Rev. Code §2905.01(A), defines kidnaping, as, among other things, restraining a person's liberty for purposes of facilitating the commission of any felony or "flight thereafter." Any person who violates that statute is guilty of a first degree felony except that "if an offender who violates division (A)(1) to (5), (B)(1), or (B)(2) of this section releases the victim in a safe place unharmed, kidnapping is a felony of the second degree." Ohio Rev. Code §2905.01(C)(1). According to the *Leslie* court, this exception "is not an element of the crime of kidnapping, but it is in the nature of an affirmative defense and is to be treated as such." *Id.* That being so, the Tenth District Court of Appeals held, in Petitioner's case, that the defense could be waived by a guilty plea. This Court is not permitted to second-guess the state courts on their interpretation of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). This substantially undercuts Petitioner's argument that the facts to which he admitted did not constitute the offense of first-degree kidnaping, because, as the state courts have interpreted Ohio law, whether the victim was released in a safe place unharmed is not an element of the offense.

Again, to quote Petitioner's traverse, these arguments were "automatic winner[s] under Ohio controlling precedent" (Doc. 40, at 8), a "'dead bang winner' on appeal," *id.*, and "a winner." *Id.* at 11. In addition to his argument that the trial court should not have accepted the guilty plea to first degree kidnaping, he claims that under *State v. Winn*, 121 Ohio St. 3d 413 (2009), the Ohio Supreme Court determined that robbery and

kidnaping were offenses of allied import which merged for sentencing purposes, and that competent counsel would have made that argument; and that the sentence on the RVO specification was actually illegal because there were no facts allowing the trial court to impose that sentence.

These arguments are not as compelling as Petitioner represents them. As to the allied offenses argument, *Winn* did hold that kidnaping and aggravated robbery were allied offenses of similar import. But it also held that such a finding is only the first step in what is a two-step inquiry; relying on its decision in cases such as *State v. Brown,* 119 Ohio St.3d 447 (2008) and *State v. Blankenship*, 38 Ohio St. 3d 116 (1988), the Ohio Supreme Court noted that the second step involves comparing the conduct which led to each conviction to determine if the crimes were committed separately - exactly the analysis which the Tenth District Court of Appeals applied in concluding that Petitioner's offenses did not merge for purposes of sentencing. Petitioner asserts that later decisions such as *State v. Corker*, 2013 WL 6569852 (Franklin Co. App. December 12, 2013) contradict that ruling, but *Corker* is a ruling from the same appellate court which held, little more than a year earlier in Petitioner's case, that Petitioner committed the two crimes with a separate animus. Further, the *Corker* court used the same analysis of the *Johnson* decision as the court of appeals did in Petitioner's case, and under that analysis, if the kidnaping "exceeded [what was] necessary to complete the offense of aggravated robbery," the offenses did not merge. *Corker*, 2013 WL 6569852, *6.

As to the RVO specification, Petitioner asserts that the only way such a specification could be taken into account for sentencing purposes was if the person had

two or more qualifying convictions within twenty years of the date of conviction of the current offense. Because he did not have those convictions, he claims that his sentence was above the permitted statutory maximum. The trial court sentenced him to five years on the RVO specification, to be served consecutively to the other sentences (ten years on count one, and four years on count two). *See* Doc. 7, Exh. 9. Again, the state court of appeals expressly rejected this illegality argument, holding that the sentence imposed was within lawful limits because the trial court had discretion to apply former Ohio Rev. Code §2929.14(D)(2)(a)(iv).

The trial court's entry (Doc. 7, Exh. 9) does not refer to any specific portion of §2929.14(D)(2), the statute which permits an additional sentence to be imposed for a defendant who, like Petitioner, has pleaded guilty to an RVO specification. It is unclear why Petitioner believes he was sentenced under §2929.14(D)(2)(b). In fact, it seems unlikely that he was, given that the State never alleged he had the requisite number of prior convictions within the required time frame to trigger the application of that subsection of the statute. Subsections 2929.14(D)(2)(a)(iv) and (v), to which the state court of appeals referred, allow the imposition of a consecutive sentence on a repeat violent offender (which can be anywhere from one to ten years) if the maximum sentence for the crime is inadequate to punish the offender or protect the public, or demeans the seriousness of the offense. Although the trial court did not specifically articulate findings on these factors, *State v. Foster*, 109 Ohio St. 3d 1, 24 (2006) held that "a judge is not compelled to make findings" when sentencing under subsection (D)(2)(a), as opposed to subsection (D)(2)(b). Thus, the sentence imposed appears to be

25

one authorized by Ohio law, and the procedure followed by the trial judge does not appear to have been improper.  That, in fact, is what the Tenth District Court of Appeals decided, and based on that finding it also determined that it would not have granted Petitioner any relief on this claim had it been raised as part of the direct appeal.

The major problem with Petitioner's position is that he has argued it in terms of whether, on these three issues, the state court of appeals made unreasonable determinations of the merits of the underlying state law issues when it analyzed the prejudice prong of the *Strickland* test.  But that is not what this Court must find in order to be able to grant him relief.  The state court clearly applied the correct legal analysis from *Strickland*, and it decided that none of the underlying claims were, as a matter of state law, meritorious, and that their assertion on direct appeal would not have led to a different result.  One might ask how that could ever be an unreasonable application of *federal* law.

Some courts have held that it cannot.  For example, in *Maldonado v. Burge*, 697 F.Supp. 2e 516, 530 (S.D.N.Y. 2010), the court dealt with a similar situation, where the state courts had found that the petitioner was not prejudiced by counsel's failure to move to suppress an identification because the grounds which would have been asserted would not have resulted in suppression under New York law.  The court observed that "[t]o the extent that petitioner is arguing that the Appellate Division's underlying analysis of New York law on suggestive identifications was incorrect, that challenge is not cognizable on habeas review."  The same concept is articulated in *O'Neal v. Kelly*, 2013 WL 2443775 (N.D. Ohio June 4, 2013), where the state appeals court

had concluded that appellate counsel was not ineffective for raising an issue about sentencing because the error the trial court committed was harmless under Ohio law. The *O'Neal* court noted that "[t]he interpretation of Ohio law, however, is the exclusive province of Ohio's courts. Federal courts will not overturn a state court's interpretation of state law unless that interpretation unequivocally contradicts the plain meaning of the law." *Id*. at *25. And in *McNary v. Lemke*, 708 F.3d 905, 921 (7th Cir. 2013), the Seventh Circuit Court of Appeals observed that a state court's ruling that an appeal challenging a jury instruction would have been meritless under state law, so that appellate counsel was not ineffective for failing to have raised that issue, "shows that, if there was an error, there was no prejudice. Had counsel raised the issue, it still would have failed." That is clearly the case here.

What Petitioner essentially argues is that the Tenth District Court of Appeals, in finding that no prejudice resulted from counsel's failure to raise these three issues, completely misinterpreted the Ohio law applicable to each. Implicit in his argument is the notion that, had the issues come up by way of direct appeal, that same court would have decided them differently. That is a hard argument to make when the state court has said just the opposite, and it does not succeed here. Even if that court were mistaken in its interpretation of Ohio law (and it is not at all clear that it was), this Court simply cannot conclude, using the words of the *O'Neal* decision, that its rulings "unequivocally contradicted the plain meaning" of Ohio law.

Phrased under the AEDPA standard, the facts of this case do not support a conclusion that the state court of appeals unreasonably applied federal law when it

found that no prejudice resulted from counsel's failure to raise these three issues on direct appeal. It applied the right federal constitutional standard, made the right inquiry, and analyzed Ohio law in a way that this Court is not generally free to second-guess or to pronounce as so unreasonable that it tainted the entire state court decision. That is fatal to Petitioner's claims, and also to his sixth claim for relief, which appears to posit that had there been more communication with Petitioner during the appellate process, some potentially meritorious issue would have been raised that might reasonably have changed the outcome of the appeal. Petitioner has not identified what that issue might have been, and although it certainly was not the best practice for appellate counsel to fail to keep Petitioner informed of the progress and strategy of the appeal, Petitioner has not demonstrated any prejudice resulting from that failure.

## VI.  RECOMMENDATION

For the foregoing reasons, it is recommended that the petition be **DENIED** and that this case be **DISMISSED**.

## VII.  PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a

judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).


/s/ Terence P. Kemp
United States Magistrate Judge